DANIEL G. BOGDEN
United States Attorney
District of Nevada
BRIAN PUGH
SARAH E. GRISWOLD
Assistant United States Attorneys
333 Las Vegas Boulevard South
Suite 5000
Las Vegas, Nevada 89101
702-388-6336
Fax: 702-388-5087



# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:10-cr-236-GMN-PAL |
| Plaintiff, | **UNITED STATES' TRIAL MEMORANDUM** |
| vs. | |
| CANDIS J. GARDLEY, and JABARI L. MARSHALL, | |
| Defendants. | |

The United States of America, by and through Daniel G. Bogden, United States Attorney, and Brian Pugh and Sarah E. Griswold, Assistant United States Attorneys, files its trial memorandum as follows.

### I. STATEMENT OF THE CASE

From in or about 2005, to in or about April 2007, defendants and their coconspirators conducted a conspiracy and scheme to defraud lenders by recruiting straw buyers to buy real estate using materially false and fraudulent pretenses, representations, and promises to lenders to obtain mortgage loans to finance the straw buyers' real estate purchases. In doing so, defendants caused money proceeds from the loan transactions to be disbursed to their own use and benefit and the use and benefit of their coconspirators.

## II. FACTS

Candis Gardley and Jabari Marshall are charged by criminal indictment with one count of conspiracy to commit bank fraud, mail fraud, and wire fraud in violation of Title 18, United States Code, Section 1349. Candis Gardley is also charged with one count of bank fraud in violation of Title 18, United States Code, Section 1344, and two counts of mail fraud in violation of Title 18, United States Code, Section 1341.

From in or about 2005, to in or about April 2007, defendants participated in a conspiracy with others charged and uncharged, including but not limited to the following individuals:

| Coconspirator | Role in the conspiracy | Current status |
| --- | --- | --- |
| Lloyd Gardley | Organizer and leader | Convicted, awaiting sentencing (no plea agreement) |
| Susanne McAllister | Escrow assistant | Convicted, awaiting sentencing (plea agreement) |
| Judy Chu-Britt | Loan officer | Convicted, awaiting sentencing (plea agreement) |
| Daniel Murray | Accountant | Convicted, awaiting sentencing (plea agreement) |
| Sharon Wagner | Real estate agent | Convicted, awaiting sentencing (plea agreement) |
| Denole Christie | False verifications of rent | Convicted, awaiting sentencing (plea agreement) |
| Arcell Mitchell | Loan officer | Convicted, awaiting sentencing (plea agreement) |
| Irma Coward | Real estate agent | Serving sentence |

The conspiracy consisted of recruiting straw buyers to purchase real estate which defendants would control. Defendants orchestrated these transactions for the purpose of receiving cash at the closing of the transactions. Defendants obtained cash through the use of cash disbursements at the close of escrow to themselves and to companies they controlled.

2

Recruiting straw buyers

Defendants and their coconspirators recruited individuals who would qualify for one hundred percent (100%) or near-100% financing for the acquisition of real estate. In order to get 100% financing, straw buyers usually had to buy the properties as owner-occupied residences. None of the straw buyers intended to occupy the residences they purchased. Straw buyers were encouraged to buy multiple properties. In most instances, a straw buyer's multiple transactions would be submitted to lenders for approval at or about the same time, all as owner occupied.

Defendants and their coconspirators described the "investment opportunity" to the straw buyers as follows:

1. Defendants or their coconspirators would pay the straw buyer for each house the straw purchased, often approximately $5,000 per house, and/or would split the profits when the house was resold.

2. Straw buyers did not have to provide any money for the transactions. They only had to provide their names, and, in some cases, their credit. All mortgage payments, earnest money deposits, costs, and fees would be paid by defendants and their coconspirators.

3. The properties would be rented out for a period of time and then resold.

Recruiting loan officers

Candis Gardley and Lloyd Gardley recruited loan officers to complete the straw buyers' fraudulent loan packages. These loan officers included Judy Chu-Britt, Kristopher Martino, and Arcell Mitchell. Chu-Britt and Martino kicked back a portion of their commissions to Candis Gardley.

///

///

Fraudulent loan applications

Once a straw buyer agreed to participate, defendants and their coconspirators had the buyer sign documents including purchase agreements and loan applications. Defendants' coconspirators prepared loan applications and supporting documentation in straw buyers' names to submit to lenders to obtain mortgage loan financing to fund the real estate straw purchases. The loan applications and supporting documentation contained materially false and fraudulent information to qualify the straw buyers for mortgage loans. The false and fraudulent information included, but was not limited to, the following:

1. <u>The true identity of the buyer/borrower</u> – Candis Gardley, Lloyd Gardley, and Jabari Marshall were the true buyers of the various properties. Defendants and their coconspirators made this clear to straw buyers at the time they were recruited. For a period of time, before allowing the homes to go into default, defendants and their coconspirators made mortgage payments. The very purpose for which an individual applies for a loan is for the bank to determine that individual's credit worthiness. The fact that the buyer named on the loan application was not the person who was going to make the mortgage payments is material to a lender's decision whether to lend.

2. <u>Credit score</u> – Jabari Marshall obtained fraudulent Social Security Numbers for straw buyers. Jabari Marshall caused these buyers and the fraudulent Social Security Numbers to be added onto preexisting credit cards and bank accounts in other people's names in order to build credit histories for the buyers associated with the fraudulent Social Security Numbers.

3. <u>Employer and position</u> – Defendants caused the buyer's employer and position to be misrepresented when the true information was insufficient to qualify the buyer for a mortgage loan. In some cases, the buyer's employer was falsely listed as a company controlled by defendants or their coconspirators, and the buyer's position was falsely listed as an executive position for a certain number of years. This false information was frequently falsely verified by "CPA letters" or "accountant letters," false paystubs, and/or false W-2s included in the loan packages sent to lenders. Lenders expect borrowers to be employed for a certain number of years in their current position to show stability.

4. <u>Income</u> – In order to qualify for some mortgage loans, borrowers need to have sufficient income for the lenders to conclude that they would be able to afford their monthly mortgage payments. In these instances, defendants caused the buyer's income to be overstated to qualify them for loans for which they would not have qualified without the misrepresentation.

5. <u>Assets</u> – Some lenders require borrowers to have bank accounts sufficiently large for the borrowers to qualify for the loan. In such instances, defendants and their coconspirators artificially inflated the borrowers' asset information. Defendants and their coconspirators used the following methods:

    a. Candis Gardley and Lloyd Gardley deposited money into straw buyers' bank accounts. The straw buyers had to pay the money back after the lender checked and verified that the funds were in the buyer's account.

    b. Candis Gardley and Jabari Marshall added or directed others to add straw buyers to their existing bank accounts. This was ordinarily done when lenders required the borrower to have bank accounts with balances sufficiently large over a period of time. This is known in the lending industry as "seasoned funds." The straw buyers were removed from the bank accounts after the lender checked and verified that the funds were in the accounts and that the straw buyers were on the accounts.

    c. Defendants' coconspirators would forge documents that falsely verified misrepresentations regarding the buyer's assets.

6. <u>Earnest money deposits</u> – Candis Gardley and other coconspirators made the earnest money deposits toward the straw transactions. The loan applications and supporting documentation falsely represented that the straw buyers made the deposits. Defendants specifically told the straw buyers that the buyers would not be required to put any of their own money toward the transactions.

7. <u>Verifications of rent</u> – When a borrower is not a current home owner, lenders require a verification of rent to demonstrate a reliable history of making rent payments. The verifications of rent often contained false information.

8. <u>Schedule of real estate owned</u> – The loan application includes a section entitled schedule of real estate owned. This section often contained material misrepresentations and omissions.

    a. Misrepresentations were usually in the form of listing the straw buyer's residence as a rental property and showing rental income when the borrower received no such rental income.

    b. Omissions were the failure to list other properties the straw buyer had recently purchased. If lenders knew that the borrower had recently purchased other properties, they would have added the debt and income related to the additional properties to calculate their ratios to determine whether the borrowers qualified for their loans. The recalculation of the ratios would usually have led to the loans being denied. In addition, defendants and their coconspirators made sure that the straws purchased multiple properties within a short period of time so the prior purchases would not show up on the straw buyer's credit report and thereby tip off the lenders to the other purchases.

9. <u>Intent to occupy the property as a primary residence</u> – During the period of time that defendants and their coconspirators participated in this mortgage fraud scheme, a buyer of a primary residence could obtain 100% financing of their home purchase if their credit score was sufficiently high. For this reason, defendants and their coconspirators recruited straw buyers with sufficiently high credit scores to qualify for 100% financing loans. This limited the amount of money needed to initiate the transactions. Straw buyers in almost every instance had no intent to occupy the properties purchased in their names. Regardless, coconspirator loan officers submitted buyers' loans as owner-occupied. They did this regardless of how many homes were being purchased in the straw buyers' names. It was common for straws to simultaneously purchase multiple homes all as owner-occupied.

Money to Defendants and Their Coconspirators

1. <u>Cash back at closing</u>: Defendants and their coconspirators caused money from the transactions to be disbursed to defendants and to companies they controlled, including Oakhill Management (controlled by Candis Gardley) and Pearmar, LLC (controlled by Jabari Marshall). Defendants knowingly concealed from lenders and other parties to the transactions that the third party disbursements were to shell companies controlled by defendants who had an interest in the transactions.

2. <u>Sales proceeds</u>: In some instances, Candis Gardley and Jabari Marshall bought houses financed with fraudulently obtained loans. They then flipped the houses to straw buyers, and received the seller proceeds from the straw transactions. In other instances, defendants received seller proceeds when they controlled the selling straw buyer.

3. <u>Commissions and fees</u>: Defendants' coconspirator loan officers, real estate agents, and escrow agents received commissions and fees from the straw transactions.

## III. EVIDENTIARY AND DISCOVERY ISSUES

A.  <u>Evidentiary Issues</u>

The Government anticipates the following evidentiary issues:

1. The Government intends to offer statements of coconspirators made during and in furtherance of the conspiracy. The Government is prepared to argue that such statements satisfy the co-conspirator exception to the hearsay rule.

2. The Government has charged three substantive counts of fraud. The three substantive counts are each related to a different buyer. Each of the buyers was involved in multiple transactions. The Government intends to introduce evidence of these other transactions. The Government views the evidence as evidence of the charged conspiracy and as inextricably intertwined non-404(b) evidence.

/ / /

/ / /

3.      Likewise, some of the transactions mentioned in paragraph 2 immediately above were previously purchased for defendants by other straw buyers. The Government may call these straw "sellers" for their testimony about their purchase transactions and sales.

4.      The Government may call straw buyers who personally interacted with defendants or who purchased houses from defendants. While the government has not charged substantive counts for all of these straws, their transactions are relevant to prove count one, conspiracy.

5.      The Government intends to call at least one coconspirator who also served as a straw buyer. The coconspirator's transactions are relevant to prove count one, conspiracy.

6.      On September 26, 2012, the Government filed a Notice of Intent To Introduce Evidence of Jabari Marshall's Prior Convictions and Incarcerations. (Doc. 215.) Defense counsel has not filed a motion in limine to exclude any of the evidence identified in the Notice or otherwise advised Government counsel of an intent to seek to exclude this evidence.

As set forth in that notice, the Government intends to introduce evidence of specific dates of incarceration and of false employment verifications to show the falsity of representations made in loan applications and supporting documents for home purchases in Jabari Marshall's name including, *inter alia*, Jabari Marshall's employment and residence during the time periods covered by each item. The Government also intends to introduce evidence of the dates of incarceration, false employment verifications, and convictions for crimes in which Jabari Marshall used fake Social Security Numbers to get car loans in his own name and in the name of straw buyers including George Marshall as evidence of intent, preparation, plan, knowledge, identity, absence of mistake, modus operandi, and/or lack of accident in accordance with Federal Rule of Evidence 404(b). In the event that Jabari Marshall testifies at trial, the Government will present evidence of Jabari Marshall's prior convictions pursuant to Federal Rule of Evidence 609(a) and 609(b).

///

B.  Discovery Issues

The Government anticipates no discovery issues. On August 26, 2013, the Government submitted a sealed in camera ex parte motion for delayed disclosure of Jamila Marshall's grand jury transcript. In the motion, the Government requested that the Court allow it to delay disclosure of Jamila Marshall's grand jury transcript until after she testifies on direct examination. Other than Jamila Marshall's grand jury testimony, the Government has disclosed all *Jencks*, *Brady*, and *Giglio* material and observed its continuing discovery obligation by disclosing all documents in its possession.

## IV. EXHIBIT LIST AND WITNESS LIST

The exhibit list and witness list will be served on defense counsel by means of electronic filing on August 29, 2013, pursuant to the Court's Order Regarding Trial.

## V. CERTIFICATE OF READINESS FOR TRIAL

The undersigned hereby certifies that she is trial counsel for the United States herein, that subpoenas have been issued for all non-Government employees who will testify herein, and that the matter is ready for trial on the date set.

Respectfully submitted this 29th day of August, 2013.

DANIEL G. BOGDEN
United States Attorney

/s/ Sarah E. Griswold
BRIAN PUGH
SARAH E. GRISWOLD
Assistant United States Attorneys

This is to certify that the foregoing Government's Trial Memorandum will be personally served upon defense counsel prior to commencement of trial.

DATED this 29th day of August, 2013.

/s/ Sarah E. Griswold
SARAH E. GRISWOLD
Assistant United States Attorney