DANIEL G. BOGDEN
United States Attorney
District of Nevada
BRIAN PUGH
SARAH E. GRISWOLD
Assistant United States Attorneys
333 Las Vegas Boulevard South
Suite 5000
Las Vegas, Nevada  89101
702-388-6336
Fax: 702-388-5087

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
-oOo-

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.:  2:10-cr-236-GMN-PAL |
| Plaintiff, | ) ) ) | **UNITED STATES' SENTENCING MEMORANDUM REGARDING DEFENDANT CANDIS GARDLEY** |
| vs. | ) ) | |
| CANDIS J. GARDLEY, | ) ) | |
| Defendant. | ) ) ) | |

The United States, by and through Daniel G. Bogden, United States Attorney, and Brian Pugh and Sarah E. Griswold, Assistant United States Attorneys, submits this Sentencing Memorandum Regarding Defendant Candis Gardley.  A Guidelines sentence is appropriate for this defendant.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**I.     THE DEFENDANT'S TOTAL OFFENSE LEVEL IS 33.**

Candis Gardley has a total offense level of 33 pursuant to the Guidelines. The applicable Guidelines are as follows:

| | |
|---|---|
| Base Offense Level [U.S.S.G. § 2B1.1(a)(1)]: | 7 |
| Loss $7-20 million [U.S.S.G. § 2B1.1(b)(1)(K)]: | 20 |
| Ten or More Victims [U.S.S.G. § 2B1.1(b)(2)(A)]: | 2 |
| Sophisticated Means [U.S.S.G. § 2B1.1(b)(10)(C)]: | 2 |
| More than $1 Million [U.S.S.G. § 2B1.1(b)(15)(A)]: | 2 |
| Manager or Supervisor [U.S.S.G. § 3B1.1(c), comment. (n.2)]: | 2 |
| Acceptance of Responsibility [U.S.S.G.§ 3E1.1(a)]: | -2 |
| **Total Offense Level** | **33** |

With a criminal history category of I, Gardley's Sentencing Guidelines range is 135-168 months.

**A.     The Loss Amount Exceeds $7 Million**

Under Section 2B1.1(b)(1), "'[a]ctual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 comment. (n.3(A)(i)). In the context of mortgage fraud, the unpaid principal balance of the fraudulently obtained loans is the actual loss. The houses obtained with the mortgage loans constitute collateral pledged for the loans. The loss amount is then reduced by "the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing." U.S.S.G. § 2B1.1 comment. (n.3(E)(ii)). *See also United States v. Washington*, 634 F.3d 1180, 1185 (10th Cir. 2011)("[I]n a mortgage fraud scheme such as this, the loss is not the decline in value of the collateral; the loss is the unpaid portion of the loan as offset by the value of the collateral."); *United States v. Turk*, 626 F.3d 743, 751 (2d Cir. 2010) ("[A] loan is merely the exchange of money for a promise to repay, with no assumption of upside benefit. At any given

time, the buildings in this case were nothing more than insulation against loss."); *United States v. Mallory*, 709 F. Supp. 2d 455, 460 (E.D. Va. 2010) ("[T]he unpaid principal on these loans is the reasonably foreseeable pecuniary harm that constitutes the initial measure of loss for purposes of § 2B1.1. This measure of loss is appropriately reduced by the amount recovered by the banks from the sale of the subject properties . . . .").

For those transactions in which Candis Gardley was involved, lending institutions made over $15 million worth of mortgage loans as a result of the fraudulent scheme. The vast majority of these properties were purchased with 100% financing, and were foreclosed. Mortgage payments made prior to foreclosure went mostly to interest on the first and second mortgages. The unpaid principal on these loans was approximately equal to the original loan amounts, which with 100% financing, also equaled the straw buyer's purchase price. This approximation constitutes a "reasonable estimate of the loss." *See* U.S.S.G. § 2B1.1, comment. (n.3(C)).

The unpaid principal is then reduced by the amount the lenders have recovered from disposing of the properties through foreclosure sales. Here, lenders obtained over $7 million through foreclosure sales for the properties that Candis Gardley was involved in fraudulently purchasing. Public records from the Clark County Recorder's Office reveal that with this credit, the loss relating to 26 properties is $8,294,487. (Ex. 1 (summary chart of loss on Candis Gardley transactions); Doc. 403 Ex. 1 (summary chart of loss on all transactions and public records (Bates Nos. 074761-075463)).)

**B.     There Are at Least Ten Victims of Defendant's Fraud**

Where an offense involved 10 or more victims, a two-level increase to the offense level applies. U.S.S.G. § 2B1.1(b)(2)(A)(i). Here the defendant's scheme defrauded at least ten lenders. *See, e.g.*, Doc. 209 at 21:13 (Flagstar Bank); Jabari Marshall Trial Tr. Exs. ("Trial Exs.") 57A (Argent Mortgage Company, LLC); 63A (Coast 2 Coast Group Inc.); 51G (Dream House Mortgage Corp.); 45B (Encore Credit Corp.); 48A (First Franklin); 61A (Hamilton Mortgage Co.); 54B (Homeview Lending Corp.);

50A (New Century Mortgage Corp.); 41A (Ownit Mortgage Solutions, Inc.); 43A (People's Choice Home Loans, Inc.); 47B (Taylor, Bean & Whitaker Mortgage Corp.).)

### C.     The Fraud Involved Sophisticated Means

Where an offense involves sophisticated means, the offense level is increased by two. U.S.S.G. § 2B1.1(b)(10)(C). "Conduct such as hiding assets or transactions, or both, through the use of fictitious entities [or] corporate shells . . . also ordinarily indicates sophisticated means." U.S.S.G. § 2B1.1, comment. (n.9(B)). "Conduct need not involve highly complex schemes or exhibit exceptional brilliance to justify a sophisticated means enhancement." *United States v. Jennings*, 711 F.3d 1144, 1145 (9th Cir. 2013). A "[d]efendant[']s effort to conceal income by using a bank account with a deceptive name [i]s sufficiently sophisticated to support application of the sentencing enhancement." *Id.*

In this case the defendant hid her involvement in the straw buyer transactions by using shell companies including Oakhill Management Inc., Excel Consulting LLC, Exquisite Window Fashions LLC, and C & S Consultants LLC. She caused money from the transactions to be disbursed to herself via third party disbursements to Oakhill Management. (*See, e.g.*, Trial Exs. 18K, 60K.) Money was also disbursed to Avante Conquest, a shell company controlled by her husband Lloyd Gardley. Defendant and her coschemers knowingly concealed from lenders and other parties to the transactions that the third party disbursements were to shell companies controlled by defendant and her coschemers who had an interest in the transactions.

The defendant used loan officer coschemers to process loans for different properties in the name of the same straw buyer at the same time. The loan officers sent the loan applications to different lenders so that lenders would not discover that a single straw buyer was really buying multiple properties at the same time. (*See, e.g.*, Trial Exs. 1A, 3A; Ex. 2.)

/ / /

4

All of this conduct constitutes sophisticated means. These steps are not inherent to conducting mortgage fraud. They may have made defendant and her coschemers more successful, or helped them avoid detection for a longer period of time. But that is what makes the means sophisticated. The two-level enhancement applies.

### D. Defendant Derived More than $1 Million

Where a "defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense," the offense level is increased by two. U.S.S.G. § 2B1.1(b)(15)(A). "'Gross receipts from the offense' includes all property, real or personal, tangible or intangible, which is obtained directly or indirectly as a result of such offense." U.S.S.G. § 2B1.1 comment. (n.11(B)). This includes the houses, or real property, purchased by the defendant through fraud.

Candis Gardley purchased two houses through fraudulently obtained loans totaling $1,820,000. (Trial Exs. 7B ($850,000 for 6109 Rabbit Track), 23C ($970,000 for 6005 Jubilee Gardens).) She also obtained $741,284.42 through her participation in this scheme. (*See, e.g.*, Ex. 3 (summary chart of Candis Gardley proceeds); Trial Exs. 42B, 69D ($103,870.92 from Jabari Marshall second mortgage on 8213 Mount Logan), 65L, 69L ($24,300 and $24,633.06 from Jamila Marshall purchase of 7185 Fairwind Acres), 65U ($30,129.52 from Jeffrey Marshall purchase of 7180 Fairwind Acres), 65T ($50,440.82 from Willie L. Parker purchase of 6125 Arwells Corner), 18K, 65V ($26,748.17 and $204.04 from Guillermo Rosales purchase of 6116 Rabbit Track), 33I, 68QQ ($85,024.21 from defendant's sale of 3912 Landsdown to Tamra Jackson).) This enhancement applies.

### E. Candis Gardley Was a Manager or Supervisor

Where a defendant "was an organizer, leader, manager, or supervisor in any criminal activity other than that described in [U.S.S.G. § 3B1.1] (a) or (b)," a two-level enhancement applies. U.S.S.G. § 3B1.1(c). In addition, an upward departure is warranted where "a defendant who did not organize,

5

lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." U.S.S.G. § 3B1.1, comment. (n.2).

Candis Gardley directed coschemers in this fraud. She was loan officer Judy Chu-Britt's contact person. (Ex. 2) Chu-Britt kicked back part of her commissions to the defendant. (*Id.*, Marshall Trial Exs. 68FF, 68II, 68JJ, 68KK, 75B.) Loan officers Kristopher Martino and Nicholas Motazedi also kicked back part of their commissions to her. (Trial Ex. 66G; Ex. 4; Trial Ex. 65B.) The defendant directed coschemer Daniel Murray to prepare false documents including W-2s, paystubs, CPA letters. (Trial Ex. 109.) She provided Murray with instructions on invoicing her and she paid him for his participation in the fraud. (Trial Exs. 65O, 68NN.)

The defendant also found straw buyers for transactions. (Trial Ex. 62L (Luna); Ex. 5 (Mulford), Ex. 6 (Delcid).) She deposited money into straw buyers' bank accounts, (Trial Ex. 68QQ at 4), and added straw buyers to her own bank accounts to make it appear that the buyers had more money than they did, and then removed them once the lenders verified the straw buyers' assets, (Trial Exs. 68A (Turner), 69A (Jabari Marshall), 69D (Luna)).

The defendant also exercised management responsibility over the property and money of this fraud. She provided earnest money deposits and closing costs in the names of straw buyers. (*See, e.g.*, Trial Exs. 43P, 69D, 45F, 69H, 47D, 68U, 54D, 68V, 68O.) She obtained closing funds from her friend, Susan Rathunde, so that the straw purchase of 8408 River Ridge in the name of George Marshall could go through. (Trial Exs. 80F, 68U, 47M, 74B.) She disbursed fraudulently obtained proceeds to other coschemers. (*See, e.g.*, Trial Exs. 65L, 65N (proceeds from Jamila Marshall purchase to Jabari Marshall); Ex. 7 at 3 (directing Susan Rathunde to disburse proceeds from Jeffrey Marshall purchase of 7180 Fairwind Acres to Jabari Marshall and Candis Gardley).) She exercised control over

the fraudulently purchased properties. She collected rent payments, (Ex. 3), and paid mortgages for properties purchased in the names of straw buyers, (*see, e.g.*, Jabari Marshall Trial Exs. 65G, 68S).

## II.   A GUIDELINES SENTENCE IS WARRANTED

The fraud Candis Gardley's participation in it support a Guidelines sentence. The defendant participated in an extensive and sophisticated mortgage fraud scheme. She fraudulently purchased properties, recruited straw buyers, directed loan officer coschemers, and controlled the money and properties obtained through the fraud. She provided direction and information to escrow officer Diane Jones, (*see, e.g.*, 53256, Trial Exs. 47J, 60E, 60G, 60I), picked up straw buyer documentation and proceeds from escrow, (*see, e.g.*, Trial Ex. 47N), received sellers proceeds when she was not the seller, (Trial Ex. 66B), and paid coschemers for their participation, (*see, e.g.*, Trial Exs. 66E (Jabari Marshall), 68L, 68CC (Sharon Wagner)).

The defendant's Guidelines do not include a two-level enhancement for using other people's Social Security Numbers to produce false means of identification. U.S.S.G. § 2B1.1(b)(11)(C)(i). This part of the scheme was implemented by coschemer Jabari Marshall. Marshall obtained other people's Social Security Numbers. He associated these Social Security Numbers with the names of himself and straw buyers including H. Layne Turner. Marshall did this by paying Derrick Pearson to add the straw buyers to Pearson's accounts to make the buyers' credit look better than it was.

These Social Security Numbers were also used to create additional means of identification for the buyers. Namely, false Social Security cards and false Social Security Administration verification letters were produced to confirm to lenders that the Social Security Numbers provided were the buyers' true Social Security Numbers. At Marshall's trial, Layne Turner testified that he signed a false Social Security card because the defendant brought it to him and asked him to sign it. Turner previously

explained to law enforcement that Lloyd Gardley obtained the false Social Security Number.  (Doc. 403 Ex. 3.)

In addition, the defendant's Guidelines do not include a two-level enhancement for obstruction of justice.  U.S.S.G. § 3C1.1.  The defendant has engaged in obstructive conduct.  Her husband and codefendant, Lloyd Gardley, wrote a letter that was careful not to further incriminate himself while at the same time trying to exculpate the defendant.  (Docs. 315-1.)  On September 12, 2013, Candis Gardley's counsel filed a motion in limine seeking to introduce at trial that letter.  (Doc. 315.)  The motion asserted that Lloyd Gardley was unavailable to testify in the defendant's trial, which was scheduled to begin on September 16, 2103.  Lloyd Gardley's medical records, however, show that as of September 14, 2013, the defendant's health condition was much improved.  He had "improved mentally, and he [wa]s able to answer questions appropriately and has had no problems." (Doc. 372 at 26 (9/14/2013 entry).)

The defendant's history and characteristics apart from this fraud do not support a non-Guidelines sentence.  Candis Gardley's fraudulent conduct is not limited to this mortgage fraud scheme.  She lied to a United States Probation Officer when coschemer Jabari Marshall needed an employer.  (Ex. 8.)  She also personally profited from a suspicious fire at 6005 Jubilee Gardens, which she had fraudulently purchased.  The defendant stopped paying the mortgage on the property in June 2007.  (Ex. 9.)  In October 2007, she listed the house for sale with coschemer Sharon Wagner.  (*Id.*)  A few days later the house burned in a suspicious fire.  (*Id.*)  The defendant provided a lease agreement for tenants that could not be located, and she was able to collect $3,000 in payments for lost rent while not paying the mortgage on the property.  (*Id.*)

/ / /

/ / /

/ / /

### III. THE DEFENDANT OWES RESTITUTION

The United States Attorney's Office solicited restitution information from the victims of the defendant's fraud. Restitution for those victims who responded totals $1,081,929.42. (Ex. 10.)[1] Restitution in this amount is thus mandatory. *See, e.g.*, *United States v. Rizk*, 660 F.3d 1125 (9th Cir. 2011).

### CONCLUSION

Candis Gardley was a manager or supervisor in this extensive mortgage fraud scheme. A sentence within the Guidelines range is appropriate.

Respectfully submitted this 15th day of January, 2014.

                        DANIEL G. BOGDEN
                        United States Attorney

                        /s/ Sarah E. Griswold
                        BRIAN PUGH
                        SARAH E. GRISWOLD
                        Assistant United States Attorneys

---

[1] Documents supporting this figure were produced to defense counsel at Bates numbers 81494-526 (produced March 11, 2013), 81830-35 (produced May 28, 2013), 83911-12 (produced November 15, 2013), and 83966-70 (produced January 15, 2014).

**CERTIFICATE OF ELECTRONIC SERVICE**

This is to certify that the undersigned has served the foregoing **UNITED STATES' SENTENCING MEMORANDUM REGARDING DEFENDANT CANDIS GARDLEY** on counsel of record by means of electronic filing.

DATED this 15th day of January, 2014.

                                                /s/ Sarah E. Griswold
                                              Sarah E. Griswold